FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ MAR 0 2 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
MOHAMMED KARIM,

        Plaintiff,

-against-

**MEMORANDUM AND ORDER**
08-CV-2235 (RRM)(LB)

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK,

        Defendant.
----------------------------------------------------X
**MAUSKOPF, United States District Judge.**

    Plaintiff Mohammed Karim ("Plaintiff") brings this action against his former employer, the New York City Department of Education ("DOE" or "Defendant"), alleging discrimination on the basis of sex and religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Currently before the Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, Defendant's motion for summary judgment is GRANTED as to Plaintiff's gender discrimination claim and DENIED as to Plaintiff's religious discrimination claim.

## BACKGROUND

    Plaintiff, a male Muslim, began his teaching career as a per diem bilingual substitute teacher for the DOE in 2003. (Def.'s Mot. for Summ. J. ("Def. Mot."), Ex. B; Second Am. Compl. ¶¶ 9, 13-14.) He was subsequently appointed to a full-time position teaching English as a Second Language ("ESL"), subject to a three-year probationary period, at Public School ("PS") 17. (Def. Mot. Ex B). In his first annual performance evaluation, for the 2003-2004 school year, Principal Margarite Filomena rated Plaintiff's performance as "satisfactory" ("S rating"), though

at least one lesson observation recommended several ways in which Plaintiff could improve as a teacher. (Def. Mot. Exs. E, F.)

After Plaintiff's first year at PS 17, Principal Filomena retired and was succeeded by Principal Cynthia Dickman for the 2004-2005 academic year. (Def. Mot. Ex. D, at 15-16.) That year coincided with the establishment at PS 17 of Reading First, a federally funded initiative employing a wholly new curriculum and materials. (Def. Mot. Exs. D, at 19-20; G, at 25.) The instructional staff at PS 17 spent a considerable amount of time learning the new curriculum for the 2004-2005 school year; as a result, Principal Dickman explained that she rated no teacher unsatisfactory ("U rating") based on teaching ability for that school year. (Def. Mot. Ex. D, at 81-82.) Indeed, only one teacher at PS 17 was ultimately rated unsatisfactory for that year – Richard Brancaccio, a tenured teacher so rated for time and attendance issues. (Def. Mot. Exs. D, at 307-08; H.) Though Jeffrey Nauser, a first-year probationary teacher, was issued a U rating, it was subsequently changed to "doubtful" ("D rating") after his union representative requested that Principal Dickman do so. (Def. Mot. Exs. D, at 108-09; H.) A D rating is only available to first-year probationary teachers. (Def. Mot. Exs. D, at 110; I.)

Principal Dickman rated Plaintiff satisfactory for the 2004-2005 year. (Def. Mot. Ex. I.) Still, two classroom evaluations by Assistant Principal Marsaggi and Principal Dickman, though rated satisfactory, described issues with Plaintiff's teaching similar to those highlighted in former Principal Filomena's report. (Def. Mot. Exs. J; K.)

Plaintiff's classes were observed on four occasions in the 2005-2006 school year. Principal Dickman observed Plaintiff's class on October 19, 2005. (Def. Mot. Ex. D, at 207.) She rated that lesson unsatisfactory, and in her Formal Report of the session, made several recommendations for improvement, including seeking help from administrators and from the

"Reading First Coach." (Def. Mot. Ex. L.) Plaintiff alleges that he did not receive the formal report until January 9, 2006, which coincided with the Muslim holiday of Eid-Ul-Adha – an allegation which the Defendant disputes. (Def. Mot. Exs. B, at 54-55; A, at ¶ 30.) At a 2006 DOE Office of Appeals and Reviews ("OAR") hearing concerning Plaintiff's termination, Principal Dickman testified that she met with Plaintiff on or around November 2, 2005 to discuss his teaching performance. (Def. Mot. Ex. D, at 207.) She claims that she informed Plaintiff that he would receive a U rating; however, Plaintiff testified that she did not do so. (*Compare* Pl.'s Decl. in Opp. to Def.'s Mot. for Summ. J. ("Pl. Decl.") Ex. 4, at 206-08 *with* Pl. Aff. Ex. 1 at 53, 107.) Plaintiff claims that this delay decreased his "opportunity and chance to overturn the rating." (Def. Mot. Ex. A, at ¶ 30.) Nonetheless, it is undisputed that he never attempted to challenge this U rating. (Def. Mot. Ex. B, at 107, 115-16, 117-18.) Plaintiff testified that he interpreted Principal Dickman's assurance that there would be "more formal evaluations" to mean that contacting his union representative was unnecessary. (Pl. Decl. Ex. 1, at 115-16.)

Similar U ratings were issued to Plaintiff by Assistant Principal Marsaggi for classes on February 15, 2006 (Def. Mot. Ex. K; *see also* Def. Mot. Ex. O) and March 23, 2006 (Def. Mot. Ex. P); the formal reports were issued to Plaintiff on February 27, 2006 (Def. Mot. Ex. K; Def. Mot. Ex. O) and April 3, 2006, respectively (Def. Mot. Ex. P.). Those ratings recommended various possible improvements and echoed Principal Dickman's report in several respects. Principal Dickman again observed Plaintiff's class on May 8, 2006, and issued to Plaintiff a formal report on June 12, 2006, largely echoing her previous suggestions, including seeking help from the Reading First Coach and other administrators. (Def. Mot. Ex. Q.). It is uncontested that Plaintiff did not avail himself of that assistance. (Def. Mot. Ex. B, at 126-27.) At the 2006

DOE OAR hearing, Principal Dickman testified that Plaintiff had difficulty rectifying issues identified in his reviews. (Def. Mot. Ex. D, at 79-80.)

Principal Dickman rated Plaintiff unsatisfactory for the 2005-2006 school year on June 14, 2006. (Def. Mot. Ex. R.) Superintendent Dr. Philip Composto subsequently reviewed Plaintiff's status as a probationary teacher; on July 13, 2006, he terminated Plaintiff's employment. (Def. Mot. Exs. V; W.)

One other third-year PS 17 probationary teacher, Mark Abelson, received a U rating in the same year as Plaintiff, based on allegations of corporal punishment and verbal abuse. (Def. Mot. Exs. A, at ¶ 53; D, at 138-40, 146-47.) However, he preemptively resigned to prevent termination, prompting Principal Dickman to give him an S rating because, as Principal Dickman testified, to give him a U rating and discontinue him would be administratively burdensome and not worth the effort: "there's no reason to invest all of that time into something when the person no longer works there." (Def. Mot. Ex. S, at 59, 97, 110-11, 146-47.) Principal Dickman testified that she was not aware that it was possible to rescind a DOE resignation, and thus obtain a teaching job elsewhere. (Def. Mot. Exs. D; T.)

Plaintiff appealed his 2005-2006 U rating and discontinuance to the DOE OAR on June 21, 2006. (Def. Mot. Ex. X.) A January 26, 2007 hearing ended with a Report and Recommendation issued by the Chancellor's Committee, which recommended Plaintiff's termination. (Def. Mot. Ex. Y.) Superintendent Composto reaffirmed the U rating and discontinuance in light of the Committee Report on May 18, 2007. (Def. Mot. Ex. Z.)

Plaintiff filed a Complaint with the New York City Commission on Human Rights ("NYCCHR") alleging that Defendant discriminated against him in violation of Title VII, the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101, *et seq.*

4

(Def. Mot. Ex. AA.) On August 10, 2007, the NYCCHR issued a Determination and Order After Investigation, finding no probable cause to believe Defendant had discriminated against Plaintiff. (Def. Mot. Ex. BB.) On March 12, 2008, the U.S. Equal Employment Opportunity Commission ("EEOC") adopted the NYCCHR's findings and issued a Right to Sue letter. (Def. Mot. Ex. CC.)

On June 3, 2008, Plaintiff commenced this action *pro se* against Defendants DOE and Principal Dickman under Title VII, alleging discrimination on the basis of sex and religion. On October 27, 2008, represented by counsel, Plaintiff amended his Complaint, bringing claims solely against DOE, alleging discrimination on the basis of sex and religion in violation of New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290, *et seq.*, the NYCHRL, and Title VII; and asserting breach of contract and intentional infliction of emotional distress claims against DOE. (*See* First Am. Compl.) On February 14, 2009, Plaintiff again amended his Complaint, alleging only that the DOE discriminated against him based on sex and religion in violation of Title VII. (*See* Second Am. Compl.)

Plaintiff makes numerous contested assertions, which he claims substantiate his discrimination claims. Plaintiff alleges that another former teacher, Richard Gosin, told him that Principal Dickman made a number of discriminatory comments respecting Islam. By affidavit, Gosin alleges that "Principal Dickman indicated that Muslim men treat Muslim women badly, discriminating against Plaintiff Karim based on his religion" and that he "heard comments from Principal Dickman regarding plaintiff's fasting during Ramadan, indicating that his breath was foul." (Def. Mem. Exs. B, at 71-73; DD ¶ 9.) Principal Dickman has denied making such statements. Also disputed in the record is Plaintiff's allegation that he was the only teacher expected to walk his class back up the stairs when they were unruly.

5

Plaintiff alleges that on June 12, 2006, Principal Dickman ignored him while he waited to speak with her outside her office. (Def. Mot. Exs. A, at ¶ 42; B, at 63.) Principal Dickman responds that this was due to the fact that Plaintiff did not have an appointment scheduled at the time, while another teacher did. (Def. Mot. Ex. D, at 236-37.) Likewise in dispute is Plaintiff's contention that Principal Dickman prevented him from being invited onto a school committee; she answers that committee membership is determined on a volunteer basis and is not in her control. (Def. Mot. Exs. A, at ¶ 47; D, at 267.) Plaintiff further alleges that Principal Dickman asked him two questions showing discriminatory animus, which she denies: first, Principal Dickman asked Plaintiff if he had proof that it was not his day to go to Columbia University for professional development training; second, she asked him whether he had called to get the training materials for Operation Respect, despite the fact that he had already reported to her that he had. (Def. Mot. Ex. B, at 56-57, 60-62.) It is undisputed that these comments did not directly or indirectly allude to Plaintiff's religion or gender.

Plaintiff also makes a number of claims with respect to the treatment of other employees at the school. Other non-Muslim employees, Plaintiff asserts, were given preferential treatment: Mark Abelson, a new probationary teacher; Jeffrey Nauser, a third-year teacher whose U rating was changed to an S rating with the promise that he would resign; Richard Brancaccio, a tenured teacher whose U rating did not culminate in termination; and Deborah Golub, a tenured teacher. (Def. Mot. Exs. D, at 308; A ¶ 52, EE). Plaintiff also claims that Principal Dickman "forced out" another Muslim employee, Mohammed Kalam, at the school. (Def. Mot. Ex. A, at ¶ 49.) In fact, that employee testified contrary to Plaintiff's assertions; he stated that his transfer was based on another school's need for a bilingual paraprofessional, and insisted that Principal Dickman did

not treat him differently because of his religion or make comments relating thereto. (Def. Mot. Ex. FF, at 19.)

Last, Plaintiff alleges, and Principal Dickman disputes, that his Formal Observation report for his October 19, 2005 lesson was not given to him until January 9, 2006, when Principal Dickman purposefully gave him his unsatisfactory report on the Muslim holiday of Eid-Ul-Adha. (Def. Mot. Ex B, at 54-55.)

Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## STANDARD OF REVIEW

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there are no genuine issues of material fact in dispute, such that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a summary judgment motion, a district court must draw all reasonable inferences in favor of the nonmoving party. *See id.* at 249 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). Thus, the court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). Any evidence in the

record of any material fact from which an inference could be drawn in favor of the non-moving party precludes summary judgment. *See Castle Rock Entm't*, 150 F.3d at 137.

Once the movant has demonstrated that no genuine issue of material fact exists, such that it is entitled to judgment as a matter of law, then "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). However, there must exist more than mere "metaphysical doubt as to the material facts" to defeat a summary judgment motion. *Id.* at 586. Instead, the non-moving party must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Only disputes over material facts "that might affect the outcome of the suit under the governing law" will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586.

With respect to an employer's motion for summary judgment in an employment discrimination context, courts are obliged to exercise particular caution in determining whether to grant summary judgment, because direct evidence of an employer's discriminatory intent is rare and "must often be inferred from circumstantial evidence." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quotation marks and citation omitted); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). However, a plaintiff cannot defeat a summary judgment motion simply by presenting conclusory allegations: "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Ragusa v. Malverne Union Free Sch. Dist.*, 582 F. Supp.

2d 326, 339 (E.D.N.Y. 2008) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)); *see also Schwapp*, 118 F.3d at 110. The ultimate test for summary judgment in discrimination cases "is whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000).

### B. TITLE VII STANDARD

Title VII provides that it is an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m); *see Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). Thus, "[a]n employment decision . . . violates Title VII when it is based in whole or in part on discrimination." *Holcomb*, 521 F.3d at 137 (citation omitted).

Courts must analyze employment discrimination claims brought under Title VII by using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). First, a plaintiff must establish a *prima facie* case of discrimination by demonstrating that: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010). The plaintiff's burden in presenting evidence to support a *prima facie* case of discrimination is "*de minimis.*" *Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009) (citation omitted).

If the plaintiff succeeds in satisfying his initial burden, then "a presumption of discrimination arises and the burden shifts to the defendant, who must proffer some legitimate, nondiscriminatory reason for the adverse action." *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010). If the defendant can offer such a reason, defendant "will be entitled to summary judgment unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Id.* (citation omitted). The Plaintiff may show, for example, that the defendant's apparently legitimate reasons were pretextual, or that the defendant's proffered reason was not the sole reason and unlawful discrimination was at least a "motivating factor[]." *Holcomb*, 521 F.3d at 138 (citation omitted). Though the framework is concededly one based on burden-shifting, plaintiff at all times bears the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (citation omitted).

## DISCUSSION

### A. GENDER DISCRIMINATION

Plaintiff here cannot establish a *prima facie* case of employment discrimination on the basis of gender, because he has not shown any connection between his gender and his termination. Moreover, Defendant has carried its burden of producing evidence that there existed legitimate, non-discriminatory reasons justifying the actions about which Plaintiff complains, and Plaintiff offers no credible rebuttal to those reasons. For the reasons discussed below, Defendant's motion for summary judgment is GRANTED with respect to the Plaintiff's Title VII discrimination claim based on gender.

### a. Plaintiff's *Prima Facie* Case

The parties concur that the first and third prongs of the *prima facie* test for discrimination have been satisfied. Though Defendant argues that the second prong – satisfactory job performance – has not been satisfied, this Court disagrees. The central issue here is the fourth prong of the test – whether Plaintiff has adequately shown a causal nexus between his gender and the unfavorable employment action. This Court finds that Plaintiff has not provided adequate evidence of such a connection.

#### *i. Satisfactory Job Performance*

In order to establish the satisfactory job performance element of his *prima facie* case, it is well-established that Plaintiff "need not demonstrate that his performance was flawless or superior." *De la Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996). Instead, Plaintiff must simply "demonstrate that he possesses the basic skills necessary" for performance of the job in question. *Id.* (quotation marks and citation omitted). Having already hired the employee in question, an "employer itself has already expressed a belief that [he] is minimally qualified." *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001); *see also Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001). Though the employer's dissatisfaction with an employee's performance may "ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action," "the qualification prong . . . cannot be transformed into a requirement that the plaintiff anticipate and disprove an employer's explanation that inadequate ability or performance justified the job action at issue." *Id.* at 696-97.

Plaintiff's evidence of his satisfactory job performance is thus sufficient to meet his burden. The DOE clearly considered Plaintiff to be qualified as an ESL teacher when it hired

him a mere three years prior to his dismissal. Though he did receive several negative performance evaluations, Plaintiff likewise received several satisfactory ratings from administrative personnel at PS 17. These facts are sufficient to meet Plaintiff's *de minimis* burden of showing that he possessed the requisite skills to perform his job.

### ii. *Nexus Between Gender and Termination*

A plaintiff may show a connection between his protected status and an adverse employment action by offering evidence of disparate treatment, a pattern or practice of discrimination, or by raising an inference of invidious discrimination. To prove that the employer subjected a plaintiff to disparate treatment, "that is, treated him less favorably than a similarly situated employee outside his protected group," the plaintiff must show he "was similarly situated in all material respects to the individuals with whom [he] seeks to compare [him]self." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citation omitted). For a plaintiff to show that a defendant has engaged in a pattern or practice of intentional discrimination, a plaintiff "must establish that intentional discrimination was the defendant's 'standard operating procedure.'" *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 158 (2d Cir. 2001) (citation omitted). Last, "an inference of discriminatory intent may be derived from . . . the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group . . . or the sequence of events leading to the plaintiff's discharge." *Leibowitz*, 584 F.3d at 502 (citation omitted). "[A] court must carefully review the record to search for any kind of evidence that would support an inference of intentional discrimination" due to the rarity of direct evidence of discriminatory behavior. *Forsyth v. Fed'n Emp't & Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005).

Plaintiff has alleged insufficient facts to make a *prima facie* case of gender discrimination. Plaintiff alleges that Principal Dickman made two remarks demonstrating discriminatory animus toward males at the school. First, Plaintiff's former colleague, by affidavit, stated that "Principal Dickman indicated that she didn't like the way Plaintiff Karim dresses – in polo shirts and slacks – because it was not professional, and that he should wear a shirt and tie. However, she never indicated that female teachers should be dressed similarly." Even taking this extraordinarily vague allegation as true, simply noting that one teacher should dress in a more professional fashion does not suggest – much less establish – discriminatory, gender-based animus. Second, Plaintiff alleges that Principal Dickman told him to "tap into his feminine side." However, this sole, stray comment is insufficient to support a claim of gender discrimination. *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (noting that "such [stray] comments cannot get a discrimination suit to a jury.").[1]

Plaintiff also attempts to prove discrimination by disparate treatment. However, virtually all the comparators offered by Plaintiff are also male. The only woman against which he offers a comparison is a tenured teacher, and is thus not similarly situated to Plaintiff "in all material respects," as is required by the Second Circuit. *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (citing *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96(2d Cir. 1999). Plaintiff and the woman comparator are not "subject to the same performance evaluation and discipline standards," because tenured teachers are subject to quite different standards than probationary teachers such as Plaintiff. *Id.* Plaintiff thus cannot show that he was similarly situated to the individuals with whom he seeks to compare himself. Moreover, Plaintiff's claim that Principal

---

[1] Plaintiff attempts to buttress his claim, apparently, through repeated reference to Principal Dickman's sexual orientation, which this Court notes has absolutely no bearing on the case at bar. Oblique insinuations to Principal Dickman's sexual orientation, without any allegation that it itself resulted in discriminatory animus, serves no relevant purpose.

Dickman has failed to hire any male teachers is belied by documentary evidence showing that she in fact hired two new male teachers during her tenure at PS 17. (Def. Mem, Ex. D at 280.)

### b. Defendant's Non-Discriminatory Reasons for Plaintiff's Unsatisfactory Rating and Termination

Even assuming, *arguendo*, that Plaintiff had made out a *prima facie* case for gender discrimination, Defendant has produced evidence of legitimate, nondiscriminatory reasons for Plaintiff's unsatisfactory ratings and for his termination. The defendant's burden is "one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). At this stage, the court is not to pass judgment on the soundness or credibility of the reasons offered by defendants, so long as the reasons given are "clear and specific." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 381 (2d Cir. 2003) (citation omitted).

Specifically, Defendant has shown that Plaintiff's unsatisfactory rating for the 2005-2006 school year was based on four unsatisfactory lesson observations. (*See* Def. Mot. Exs. R; L; O; P; Q.) Unless performance standards are set in bad faith, Plaintiff's subjective disagreement with these standards is irrelevant to his gender discrimination case. *See Thornley v. Penton Publ'g*, 104 F.3d 26, 29 (2d Cir. 1997).

Thus, Defendant has carried its burden of production, and demonstrated that there existed at least colorable non-discriminatory reasons for terminating Plaintiff based on his four unsatisfactory lessons throughout the 2005-2006 school year.

### c. Plaintiff Cannot Show Pretext for Gender Discrimination

In light of defendants' legitimate nondiscriminatory reason for terminating Plaintiff's employment with DOE, the *McDonnell Douglas* presumptions "disappear from the case." *James*, 233 F.3d at 156. The burden falls on the Plaintiff to offer "sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence" that unlawful

14

discrimination caused the adverse employment action. *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). Plaintiff has failed to offer evidence to raise a question of fact that the Defendant's proffered reason for terminating him was pretextual, or that gender discrimination played any role in that decision. Nothing in the record points to any nexus whatsoever between Plaintiff's adverse employment action and impermissible animus based on gender. For these reasons, Defendant's motion for summary judgment is GRANTED with respect to Plaintiff's gender discrimination claim.

## B. RELIGIOUS DISCRIMINATION

In contrast to his gender discrimination claim, Plaintiff has shown that there exist genuine issues of material fact as to Principal Dickman's alleged remarks about Muslims and alleged behavior toward Plaintiff and other Muslims, and whether these, if they indeed occurred, present an adequate nexus to the unsatisfactory reviews and termination at issue. Defendant has alleged an adequate nondiscriminatory reason for firing Plaintiff – namely, his unsatisfactory teaching based on performance reports, *see supra*. However, drawing all inferences in the Plaintiff's favor, Plaintiff has shown there are genuine issues of material fact as to whether his ratings and subsequent termination were based on discriminatory animus. For example, the parties dispute whether Principal Dickman purposefully delayed Plaintiff's performance report in order to give it to him on a Muslim holiday and cause him distress. Most important, the parties hotly contest whether Principal Dickman made remarks showing discriminatory animus toward Muslims, and whether these remarks were related to any alleged discrimination or ill-treatment toward Plaintiff. In particular, the veracity and credibility of Gosin's statements, as presented on this motion through affidavit, is disputed. Moreover, the extent to which Principal Dickman singled out Plaintiff, treating him in a manner disparate from other teachers, and indeed whether she did

so at all, is contradicted by the parties. Last, Principal Dickman's alleged disparate treatment of Plaintiff and other teachers – in particular, Jeffrey Nauser – remains in dispute.

Accepting all of Plaintiff's allegations as true, as is required at this stage of the proceedings, this Court finds that there exist disputes of fact that preclude a grant of summary judgment. Thus, Defendant's motion with regard to Plaintiff's religious discrimination claim is DENIED.

## CONCLUSION

For the reasons stated above, Defendant's summary judgment motion is DENIED as to Plaintiff's religious discrimination claim, and GRANTED as to Plaintiff's gender discrimination claim.

SO ORDERED.

Dated: Brooklyn, New York
February 28, 2010

s/Roslynn R. Mauskopf
_____
ROSLYNN R. MAUSKOPF
United States District Judge